UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

UMB BANK, N.A.,                       :

                              :

              Plaintiff,          :

                              :        24-CV-8668 (JMF)

        -v-                  :

                              :     MEMORANDUM OPINION

BRISTOL-MYERS SQUIBB COMPANY et al.,   :       AND ORDER

             Defendants.    :

                              :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case involves a long-running $6.7 billion dispute arising out of the November 2019 acquisition by Bristol-Meyers Squibb Company ("BMS") of Celgene Corporation ("Celgene"). In connection with the acquisition, BMS issued to Celgene shareholders contingent value rights, or CVRs, which would have value only if the Food and Drug Administration ("FDA") approved marketing applications for three of Celgene's most valuable drug products by specified milestone dates. When the FDA failed to approve one of the drugs, the CVRs expired worthless, and litigation followed. The Court dismissed an earlier iteration of the case after concluding that Plaintiff UMB Bank, N.A. ("UMB") had not been properly appointed Trustee for the CVR holders and, thus, lacked standing. *See UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 21-CV-4897 (JMF), 2024 WL 4355029, at *13-14 (S.D.N.Y. Sept. 30, 2024) ("*UMB I*"). That case is currently on appeal. *See UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 24-2865 (2d Cir. appeal docketed Oct. 29, 2024, argued Dec. 5, 2025). In the meantime, UMB filed this suit. On December 1, 2025, the Court issued an Opinion and Order granting in part and denying in part BMS's motion to dismiss. *See UMB Bank, N.A. v. Bristol-Myers Squibb Company*, No. 24-CV-8668, 2025 WL 3442747, at *1-2 (S.D.N.Y. Dec. 1, 2025) ("*UMB II*") (ECF No. 85). Most

relevant for present purposes, the Court concluded that it had jurisdiction because UMB now has Article III standing.  Specifically, the Court concluded that UMB had been retroactively installed as Trustee through a "reconfirmation" process in 2024 in which the beneficial owners of a majority of the CVRs obtained proxies from the Registered Holder of the CVRs.  *See id.* at *6-9.

Now pending are three motions filed by BMS: a motion for reconsideration of the Court's December 1, 2025 Opinion and Order; a motion, in the alternative, for certification of an immediate appeal pursuant to 28 U.S.C. § 1292(b); and a motion to dismiss putative cross-claims asserted by the once (and perhaps future?) Trustee and co-Defendant Equiniti Trust Company ("Equiniti"), which sought to preserve the rights of the CVR holders in the event either this Court or the Second Circuit determined that Equiniti, and not UMB, is the Trustee with standing to bring suit.  *See* ECF Nos. 87, 90.  The Court will briefly address each motion in turn.[1]

### THE MOTION FOR RECONSIDERATION

First, BMS provides no valid grounds for reconsideration of the Court's Opinion and Order.  "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.  Rather, the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).  BMS argues reconsideration is warranted here because, in its view, the 120-day deadline contained in Section 1.4(a) of the CVR Agreement means that "authorizations collected in 2024 could not retroactively authorize

---

[1]    The Court assumes familiarity with the relevant facts and terms, which are discussed at length in the Court's prior Opinions in *UMB I* and *UMB II*.

consents that ceased to be 'valid' or 'effective' three years earlier." ECF No. 88 ("BMS Mem."), at 5. But this is precisely the argument it made in its earlier motion to dismiss, *see* ECF No. 52, at 13 (arguing that "[t]he expired beneficial owner signatures from December 2020 could not be retroactively validated by . . . proxies obtained more than three years later" (emphasis omitted)), which the Court considered and rejected in its Opinion and Order, *see UMB II*, 2025 WL 3442747, at *6. BMS points to "no controlling decisions or data" that the Court overlooked. *Analytical Survs.*, 684 F.3d at 52 (internal quotation marks omitted). Instead, it merely seeks a second bite at the apple, which is not a basis for reconsideration.

In any event, even if the Court were to reconsider its holding on this point — and to be clear, it does not — it would still reject BMS's preferred interpretation as inconsistent with the plain text of Section 1.4(a). BMS previously argued — and the Court agreed — that "the signatures of alleged beneficial owners of CVRs that UMB submitted in its attempt to change the trustee had no legal effect." *UMB Bank, N.A. v. Bristol-Meyers Squibb Co.*, No. 21-CV-4897 (JMF), ECF No. 74, at 1 (S.D.N.Y. Feb. 2, 2024). The signatures therefore did not implicate Section 1.4(a)'s 120-day deadline which, by its terms, applies only to "valid or effective" "vote[s] or consent[s]." ECF No. 1-1 ("CVR Agreement"), § 1.4(a). To the extent that BMS now contends that those signatures were valid for the purpose of starting the 120-day clock and nothing else, *see* BMS Mem. 4-5, that self-serving argument fails because Section 1.4(a) requires any such "consent" to be provided by either a Holder or a Holder's "duly designated prox[y]." CVR Agreement § 1.4(a). At the time they signed, the beneficial owners of the CVRs fit into neither category. Thus, BMS's motion for reconsideration must be and is DENIED.

**MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

BMS's request, in the alternative, for certification of the Court's Opinion and Order to pursue immediate appeal under 28 U.S.C. § 1292(b) is similarly deficient. Section 1292(b) represents a "rare exception" to the "basic tenet of federal law" that appellate review should be delayed "until a final judgment has been entered." *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). A district court has discretion to certify an order for interlocutory appeal if the moving party shows that the order "(1) involves a controlling question of law"; (2) "there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2014 WL 1881075, at *1 (S.D.N.Y. May 9, 2014). BMS argues that two holdings from the Court's December 1, 2025 decision meet these requirements: (1) that Section 1.4(a) of the CVR Agreement does not bar the retroactive installation of UMB as Trustee; and (2) that an "Event of Default" can arise under Section 8.1(b) of the CVR Agreement even when the notice of said default is provided only after the Agreement terminated. *See* BMS Mem. 9.

This Court is not averse to granting certification where the requirements of Section 1292 are met. *See New York v. Arm or Ally, LLC*, No. 22-CV-6124 (JMF), 2024 WL 2270351, at *1 (S.D.N.Y. May 20, 2024); *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393-94 (S.D.N.Y. 2019); *United States ex rel. Wood v. Allergan, Inc.*, No. 10-CV-5645 (JMF), 2017 WL 1843288, at *1 (S.D.N.Y. May 4, 2017); *Yu v. Hasaki Rest., Inc.*, 319 F.R.D. 111, 117 (S.D.N.Y. 2017); *Atlantica Holdings*, 2014 WL 1881075, at *1. But that is not the case here. The Court need not and does not decide whether the first and third prongs of the test are satisfied because BMS fails to show that the second prong — that there is substantial ground for

difference of opinion — is met as to either of the holdings that it challenges.  Courts in this

Circuit have found the second prong met where "(1) there is conflicting authority on the issue, or

(2) the issue is particularly difficult and of first impression for the Second Circuit."  *In re Enron*

*Corp.*, Nos. 06-CV-7828, 07-CV-1957 (SAS), 2007 WL 2780394, at \*1 (S.D.N.Y. Sept. 24,

2007) (internal quotation marks omitted).  "A mere claim that a district court's decision was

incorrect," *id.* (internal quotation marks omitted), or "the mere presence of a disputed issue that

is a question of first impression, standing alone," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), is

insufficient.  Instead, a district court must "analyze the strength of the arguments in opposition to

the challenged ruling when deciding whether the issue for appeal is truly one on which there is

*substantial* ground for dispute."  *In re Flor*, 79 F.3d at 284 (internal quotation marks omitted).

Here, BMS identifies no conflicting authority in this or any other Circuit on either issue.

Nor does it argue that either issue is one of first impression.  Instead, citing cases for basic and

undisputed principles of contract interpretation — principles, it should be noted, that the Court

itself articulated in its December 1, 2025 decision, *see UMB II*, 2025 WL 3442747, at \*6 —

BMS baldly asserts that the Court misinterpreted the relevant provisions of the CVR Agreement.

*See* BMS Mem. 11-13 (citing *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 39

(N.Y. 2018), for the proposition that an agreement "must be enforced according to the plain

meaning of its terms" and *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 359-60

(N.Y. 2019), for the proposition that courts must honor the "balance struck at the conclusion of

the parties' negotiations" (internal quotation marks omitted))).  Making matters worse, the Court

has repeatedly considered and rejected each issue BMS raises.  *E.g.*, *UMB I*, 2022 WL 2290609,

at \*2 (rejecting the argument that "Plaintiff's suit must be dismissed because the notice of default

was sent after the CVR Agreement had terminated"); *UMB II*, 2025 WL 3442747, at \*9 (noting

that the Court "squarely rejected" the same argument regarding the notice of default in *UMB I* and "sees no reason to revisit that ruling here"); *id.* at \*6 (rejecting the argument that Section 1.4(a) of the CVR Agreement bars retroactive appointment of UMB as a Trustee). At bottom, BMS's arguments are nothing more than a "claim that [the] district court's decision was incorrect," which is insufficient to establish a "substantial ground for dispute." *In re Enron Corp.*, 2007 WL 2780394, at \*1 (cleaned up). Thus, its request for certification of the December 1, 2025 Opinion and Order must be and is DENIED.

## MOTION TO DISMISS EQUINITI'S CROSS-CLAIMS

That leaves only the question of what to do with BMS's motion to dismiss Equiniti's putative cross-claims. *See* ECF No. 90. As noted, Equiniti filed those claims to preserve "the rights of the CVR holders," ECF No. 81, ¶ 17, in the event that "either this Court or the Court of Appeals determine[s] that UMB is not the Trustee," *id.* ¶ 15. It further stated that, "[s]hould either Court determine, in a final order not subject to appeal, that UMB is the Trustee today, Equiniti would voluntarily dismiss its cross-claims." *Id.* ¶ 18. This Court *has* determined (and now reaffirmed) that UMB is the Trustee today — although that determination is obviously challengeable on appeal (albeit later). Unless the Court's determination is ultimately reversed, however, it follows that Equiniti is not the Trustee and indisputably lacks standing to bring claims on behalf of the CVR holders. That raises the question of what to do with Equiniti's cross-claims. One option would be to dismiss them (either for lack of standing or as unripe) without prejudice to renewal in the event that it were ultimately determined that Equiniti, not UMB, is the Trustee. An alternative (which could make sense if dismissal would risk prejudicing the CVR holders in any way) would be to stay the cross-claims until the question of who is the Trustee is finally settled. The parties — including UMB — are hereby ORDERED to

6

confer and file a letter (ideally jointly) **no later than May 18, 2026**, addressing whether and how the Court should proceed with respect to Equiniti's cross-claims, including whether it should rule on BMS's motion now and whether it should hold a conference.

## CONCLUSION

For the reasons stated above, BMS's motions for reconsideration and certification of an interlocutory appeal are DENIED.  The Court reserves judgment on BMS's motion to dismiss Equiniti's putative cross-claims.  The Clerk of Court is directed to terminate ECF No. 87.

SO ORDERED.

Dated: May 7, 2026
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

7